UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAILA ALIZADEH, an individual,
SKYMARK PROPERTIES CORP., INC.,
A Delaware corporation,
LIBERTY & YORK, INC., a Delaware
Corporation, SKYMARK PROPERTIES II, LLC,
a Michigan limited liability company,
SKYMARK PROPERTIES III, LLC,      Case No. 20-12372-SFC-DRG
a Michigan limited liability company,     Hon. Sean F. Cox
SKYMARK SPE, LLC, a Delaware limited     Mag. Judge David R. Grand
Liability company, and 2399021 ONTARIO,
INC., a Canadian corporation,

       Plaintiffs,

vs

MORTEZA ("BEN") KATEBIAN,
an individual, PAYAM KATEBIAN,
an individual, MORROW GA INVESTORS, LLC,
a Delaware limited liability company,
2638168 ONTARIO, INC., a Canadian
Corporation, FLEMINGTON CAPITAL CORP.,
a Delaware corporation, JORDAN ASHER
SAMUEL, a Canadian individual, PANTER
SAHEBDIVANI, a Canadian individual, HOSEINALI
SAHEBDIVANI, a Canadian individual,
ALI BEHROUZ, a Canadian individual, and
GREEN LAKE REAL ESTATE FUND, LLC,
a Delaware limited liability company,

       Defendants.
_____

## THE DEFAULTED DEFENDANTS' MOTION TO SET ASIDE DEFAULTS

Page **1** of 13

## THE DEFAULTED DEFENDANTS' MOTION TO SET ASIDE DEFAULTS

Defendants Morteza Katebian and his son, Defendant Payam Katebian (together, the "**KATEBIAN DEFENDANTS**"), as well as Defendant Morrow GA Investors II, LLC ("**MORROW**") Defendant Flemington Capital Corp. (hereafter referred to as "**FLEMINGTON**") and Defendant Hoseinali Sahebdivani (hereafter, "**H.** Defendants Morteza Katebian and his son, Defendant Payam Katebian (together, the "**KATEBIAN DEFENDANTS**"), as well as Defendant Morrow GA Investors II, LLC ("**MORROW**") Defendant Flemington Capital Corp. (hereafter referred to as "**FLEMINGTON**") and Defendant Hoseinali Sahebdivani (hereafter, "**H. SAHEBDIVANI**"). The Katebian Defendants, Morrow, Flemington and H. Sahebdivani, together, are referred to as the "**DEFAULTED DEFENDANTS.**" By their attorneys, the Defaulted Defendants respectfully **SAHEBDIVANI**"). The Katebian Defendants, Morrow, Flemington and H. Sahebdivani, together, are referred to as the "**DEFAULTED DEFENDANTS.**" By their attorneys, the Defaulted Defendants respectfully request that this Honorable Court set aside the Clerks Entries of Default [Docket Nos. 18, 19, 22, 23 & 28, **EXHIBITS 1, 2, 3, 4 & 5,** hereafter referred to as the "**DEFAULTS**"] pursuant to Fed. R. Civ. P. 55(c). The Defaults, including the "**APPLICATIONS**" [Docket Nos. 16, 17, 20, 21 & 27, **EXHIBITS 6, 7, 8, 9 & 10**, are

Page **2** of **13**

attached and incorporated by reference into the Defaulted Defendants Brief in Support of Motion to Set Aside Defaults].[1]

Plaintiffs should be required to address their RICO and conspiracy to violate RICO claims on their merits – or more precisely, their lack of merit - something Plaintiffs have been loath to do in any forum. Like the allegations made by these Plaintiffs in Case No. 20-cv-18-13379 (hereafter referred to as the "**MEMBER LITIGATION**"), even a cursory review of the Complaint in this action (Case No. 20-2372-SFC-DRG, and hereafter referred to as the "**RICO ACTION**") reveals that the *sine qua non* of this RICO Action – just as in the Member Litigation, is the ownership of the stock in Liberty & York Corp., and therefore, the ownership of each of the Skymark Plaintiffs. But that determination – who owns the stock in Liberty & York Corp. - is precisely what is pending before this Court in the Member Litigation, and no such determination has yet been made.

Presumably, seeking a second bite at the apple, Plaintiffs simply dressed up their Member Litigation allegations, re-styled them as the RICO Action and offered nothing more than re-hashed versions of the claims made in defense of the Member Litigation. Equally importantly, the claims in this RICO Action arise out of the very same transactions, occurrences and operative facts as the claims alleged in the

---

[1] References to Exhibits refer to those attached and incorporated into the Defaulted Defendants' Brief in Support of Motion to Set Aside Defaults.

Member Litigations, and therefore, the claims should have been – but were not – asserted in the Member Litigations as compulsory counter and/or third-party claims, because they were, and are, in fact, compulsory. *See* Fed. R. Civ. P. 13(a); *see also Bauman v. Bank of Am., N.A.,* 808 F.3d 1097, 1101 (6th Cir. 2015) ("a claim's compulsory status depends on whether (1) the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (2) the claim is one that the party 'has' at the time that the party is to file his responsive pleading…A party's failure to plead a compulsory counterclaim forever bars that party from raising the claim in another action.") (internal quotations and citations omitted); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). In fact, virtually every claim alleged in both the RICO Action and the Member Litigation is predicated on the very same dispositive question, i.e. who owns the stock in Liberty & York Corp.? But that issue has been thoroughly discovered in the Member Litigation and is now ripe and ready for trial. These RICO Action claims may not now, therefore, be presented to the Court under the guise of a newly filed action. *See, e.g.,* Complaint at ¶¶37-86, 150-153, 178 & 179; *see also Sovran Bank, N.A. v. Parsons*, 159 Mich. App. 408, 414 (1987) ("Where the rights of parties to the second action cannot be properly determined until the questions raised in the first action are settled the second action should be stayed.") (internal citation omitted); *c.f. Cyclops Corp. v. Fischbach & Moore, Inc.*, 71 F.R.D. 616 (W.D. Pa.

1976); *Fagnan v. Great Central Ins. Co.,* 577 F.2d 418 (7th Cir. 1978), *cert. denied*, 439 U.S. 1004 (1978) ("When plaintiffs' claim against an automobile driver existed at the time the pleadings were served in a previous action, arose out of the same transaction or occurrence that was the subject of that action, and did not require for its adjudication the presence of third parties, plaintiffs' claim against the driver's insurer under Wisconsin's direct-action statute was a compulsory counterclaim and was extinguished by the judgment in that action.").

Neither: (a) flip-flopping the status of the Parties, defendants v. plaintiffs; (b) adding the Katebian Defendants' (Morteza & Payam Katebian) friends, family and business associates as named Defendants; nor (c) re-styling Plaintiffs' conclusory – albeit wholly unsupported - contentions as RICO & conspiracy claims, alters or disguises the conclusion that this action amounts to nothing more than a re-hash of un-alleged compulsory claims in the Member Litigation. For reasons known only to these Plaintiffs, however, these Plaintiffs elected not to assert these claims in the Member Litigation. In fact, Plaintiffs never even sought leave to do so, notwithstanding the mandates of Fed. R. Civ. P. 13(a).

Meanwhile, Plaintiffs, knowing Defendants were having difficulty securing and engaging Michigan counsel, but more likely to avoid the Court's scrutiny of these claims on their merits (or more precisely, their lack thereof), immediately sought (and secured) the Defaults against each of the Defaulted Defendants. The

Defaulted Defendants, however, request that this Honorable Court set aside the Defaults and put a stop to this pattern of behavior because, among other reasons:

- ➢ Plaintiffs failed to properly serve the Defaulted Defendants;

- ➢ This Court, therefore, does not yet have personal jurisdiction over the Defaulted Defendants;

- ➢ Plaintiffs allege unsupported conclusions – not facts – to demonstrate that Defaulted Defendants have sufficient, minimum contacts with the State of Michigan or that they purposefully availed themselves of our courts and laws, presumably to permit this Court to acquire personal jurisdiction under Michigan's long-arm statute;[2]

- ➢ Defendant Morteza Katebian owns 100% of the stock in Plaintiff Liberty & York Corp., unless and until this Court rules differently, and therefore, Liberty & York Corp. and each of the Skymark Plaintiffs lack standing and had no authorization to file this RICO Action;

- ➢ Plaintiffs also lack standing, given that the *sine qua non* of the RICO Action claims rests on this Court's determination of the ownership of the Liberty & York Corp. stock in the Member Litigation – a determination yet to be made, but one that is ripe for trial before this Court;

---

[2] *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (2009) ("*conclusions*, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by *factual allegations*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.") (*emphasis added*); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-557 (2007) ("…a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.")

- ➢ The claims in the RICO Action are compulsory counter & third-party claims in the Member Litigation, but Plaintiffs failed to plead such claims, barring assertion of the claims in this RICO Action;[3]

- ➢ The rights of Parties to this RICO Action cannot be properly determined until the stock-ownership questions raised in the Member Litigation is adjudicated, and therefore, this action should be stayed or dismissed.

The Defaulted Defendants have numerous additional meritorious defenses to the claims alleged in this RICO Action, which are identified and discussed in greater detail in the Defaulted Defendants' Brief in Support of Motion to Set Aside Defaults. *See* the Defaulted Defendants' Affidavit of Meritorious Defense (the "**AFFIDAVIT**") attached and incorporated as **EXHIBIT 11.** Under Fed. R. Civ. P. 55(c), therefore, this Court should grant the Defaulted Defendants' Motion because:

1. The Defaulted Defendants have meritorious defenses;

2. Plaintiffs will suffer no prejudice by virtue of having the Defaults set aside; and (3)

3. The Defaulted Defendants' failure to file responsive pleadings was not willful or reckless.

---

[3] *See Cyclops Corp. v. Fischbach & Moore, Inc.*, 71 F.R.D. 616 (W.D. Pa. 1976); *See also Fagnan v. Great Central Ins. Co.,* 577 F.2d 418 (7th Cir. 1978), *cert. denied*, 439 U.S. 1004 (1978) ("When plaintiffs' claim against an automobile driver existed at the time the pleadings were served in a previous action, arose out of the same transaction or occurrence that was the subject of that action, and did not require for its adjudication the presence of third parties, plaintiffs' claim against the driver's insurer under Wisconsin's direct-action statute was a compulsory counterclaim and was extinguished by the judgment in that action.")

Finally, pursuant to E.D. Mich. L.R. 7.1, and on more than one instance, the undersigned counsel conferred with Plaintiffs' counsel, Messrs. Kochanowski & Schwartz, via telephone and via email, explained the nature of this Motion and its legal basis, but also advised that, once engaged, he would accept service of the Summons and Complaint, but Plaintiffs' counsel denied concurrence in the relief sought and elected to pursue the Defaults. In fact, counsel for the Defaulted Defendants also rejected the offer of the Defaulted Defendants' execution of waivers of service.

Plaintiffs' strategy comes as no surprise, given non-Party Arash Missaghi's – Plaintiff Alizadeh's husband and her Svengali – ongoing behavior, including his repeated threats to continue to sue the Katebian Defendants until, "there is nothing left." *See* **EXHIBIT 12**. Indeed, Mr. Missaghi long ago advised the Katebian Defendants of the following in an email, dated July 20, 2018:

> …You know this is only the beginning, right? *I will stop when I know there's nothing left*. I can give u a sneak preview to your midget friends. You can watch and see what happens to them and then while u have a beer with them to discuss the matters u can tell them what's happening to you too. Maybe u can use their lawyer too…*Anyways we will be tangled up for a very long time and just when its almost over I will start a new one*. I will continue with a firm budget set for you and your family for litigation and court matters for an entire decade. Have a nice life of what will be left of it.

*See* **EXHIBIT 13**, July 20, 2018 Email from Missaghi to Katebian. In fact, according to one witness, Mr. Bahram Azizbeiki, Missaghi went so far as to shoot shot at least

one adverse witness against him, just as the witness ascended the courthouse stairs in Canada. *See* **EXHIBIT 14,** Declaration of Bahram Azizbeiki.

This conduct, unfortunately, is simply par for the course with Alizadeh, Missaghi, Wilson and their various business enterprises. For example, and as reported in the Detroit Free Press:

> Many of the people involved — Missaghi, Alizadeh and Wilson — are no strangers to alleged criminal wrongdoing in Canada.
>
> Last year, Missaghi was charged in Toronto with a $17 million mortgage fraud scheme dating back to 2013 and earlier along with another man, Grant Erlick, the Toronto Star reported in March 2018. Golnaz Vakili, an attorney, allegedly fled Canada for Europe but ended up cooperating with the investigation. Masumeh Shaer-Valaie and Bob Bahram Azizbeiki were also charged.
>
> The newspaper reported last year that Missaghi has also been charged previously for fraud, making threats to women and others, along with conspiracy to commit murder and arson. The Star says he was not convicted of any of them. on his connection with another $6.4 million scheme.
>
> In June, Katebian asked through his attorneys to be deposed via video conference because, he claims, he was told that one of the victims of a double homicide was found with "a photo of Ben, his address along with information about the make and model of his automobile."
>
> "Ben received from the police various instructions/suggestions intended to ensure his safety until the matter could be investigated and any threat to Ben resolved," Boettcher wrote to Frank. "Ben informed me that he is leaving Toronto to an undisclosed location."
>
> Toronto Police declined comment to Crain's on the veracity of that claim because the case is "now with the courts, so it would be inappropriate for us to comment on anything at this stage," a spokeswoman said in an email.
>
> Both Wilson and Alizadeh were charged in 2015 with participation in a criminal organization, fraud over $5,000, obtaining by false pretense and other crimes.
>
> Moving forward

*See* **Exhibit 15**, November 24, 2019 Detroit Free Press Article.  In fact, at the sentencing hearing of a defrocked Canadian lawyer, the Court observed that:

> Mr. Missaghi told Ms. Vakili that he could ruin her by making sure she could not practice law or by ensuring that no one would hire her as a lawyer.  He told her he would put up encumbrances on her parents' property and tie them up in legal proceedings.  As time went on, he told Ms. Vakili about his violent criminal background and his ties with organized crime, to intimidate and control Ms. Vakili.  He also told her that no one will know what she did as long as she processed just one or two more of his real estate financing deals, that no one would be out any money and then she would not need to do this again.

***

```
However, an investigator with Law Pro reached out
to her as a result of an investigation into one of
the transactions.  In the course of this
discussion the investigator told Ms. Vakili to be
cautious as there was evidence that Missaghi was
involved with organized crime and that she should
go to the police.  This only served to reinforce
Ms. Vakili's belief that Mr. Missaghi was truly
connected to organized crime and to fear for her
safety and that of her family.
```

See **EXHIBIT 16**, Sentencing Transcript of Attorney Vakili. Succinctly stated, Missaghi – often acting through his wife, Alizadeh, and right-hand man, Wilson - engages in this sort of conduct as a steady diet, and these Defaults should be set aside.

**WHEREFORE,** for the reasons stated above, and for those additional reasons discussed in more detail in the contemporaneously filed Brief in Support of the Defaulted Defendants' Motion to Set Aside Defaults, the Defaulted Defendants respectfully request that this Honorable Court grant the Defaulted Defendants' Motion and enter and order granting the following relief:

  A. Setting aside the Defaults [Docket Nos. 18, 19, 22 & 23];

  B. Denying Plaintiffs' Motion for Default Judgment as to Morrow, Flemington and Morteza Katebian [Docket Nos. 24 & 25];

C. Deem each of the Defendants (apart from Green Lake) served, but provide *ALL* Defendants with a reasonable amount of time in which to file responsive pleadings up to, and through, December 1, 2020; and

D. Such other or different relief as the Court deems just and equitable.

                                       Respectfully Submitted,

                                       ***PLUNKETT COONEY***

                                       /s/*Sean M. Walsh*
                                       Sean M. Walsh (P48724)
                                       Attorneys for Defendants
                                       (*Other than Green Lake*)
                                       38505 Woodward Ave., Suite 100
                                       Bloomfield Hills, MI  48304
                                       (248) 901-4000 (Office)
                                       (248) 901-4040  (Facsimile)
                                       swalsh@plunkettcooney.com

Dated:  October 25, 2020

# CERTIFICATE OF SERVICE

      I hereby certify that on October 25, 2020, I electronically filed the foregoing with the Clerk of the court using the ECF system, which will send notification of such filing to each attorney of record.

*PLUNKETT COONEY*

By: /s/*Sean M. Walsh*
SEAN M. WALSH (P48724)
Attorneys for Defendants
(Other than Green Lake)
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
(248) 901-4000
swalsh@plunkettcooney.com

Open.27261.04614.25163743-1