UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SKYMARK PROPERTIES
CORPORATION, INC., *et al.*,                          Civil Action No. 20-12372

                Plaintiffs,                          David R. Grand
                                                              United States Magistrate Judge[1]

v.

MORTEZA KATEBIAN, *et al.*,

                Defendants.
_____/

### ORDER ON DEFENDANT'S MOTION TO COMPEL PLAINTIFFS TO PRODUCE ARA MISSAGHI FOR A DEPOSITION AND TO PRODUCE DOCUMENTS IN MR. MISSAGHI'S POSSESSION OR CONTROL (ECF No. 393)

Before the Court is Defendants' motion to compel Plaintiffs to produce non-party Ara Missaghi ("Missaghi") for a deposition and to produce all documents previously requested that are in Missaghi's possession or control. (ECF No. 393). The motion was fully briefed (ECF Nos. 403, 410), and the Court heard oral argument on March 11, 2024. The Court provided its reasoning on the record for granting the motion, but Plaintiffs' counsel asked the Court to issue a written order because Plaintiffs might wish to (1) file objections with "the district judge," and/or (2) appeal the ruling to the Sixth Circuit Court of Appeals. Despite the fact that the parties have consented to the undersigned presiding over the case for all purposes, and that parties "cannot immediately appeal discovery orders

---

[1] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 339).

1

in most cases," *Luxshare, Ltd. v. ZF Auto. US, Inc.*, 15 F.4th 780, 782 (6th Cir. 2021), in light of the issues at stake, the Court agreed to issue this written Order to further explain and memorialize its ruling.

**Background**

In its 61-page Report and Recommendation (the "R&R") (issued prior to the parties' consenting to the undersigned's jurisdiction), the Court provided a detailed discussion of the complex background of the dispute between the parties, which is hereby incorporated by reference. (ECF No. 201, PageID.16117-134). For purposes of this Order, however, it suffices to say that Plaintiffs are a series of domestic and Canadian corporations with principal places of business in Ontario, Canada, and which own real estate in the United States and Canada. When this lawsuit was first filed, one of the named plaintiffs was Laila Alizadeh ("Alizadeh"), who is married to Missaghi. (ECF No. 1). Also named as a plaintiff in the original complaint was Liberty & York, Inc. ("L&Y"), the holding company of many of the plaintiff entities. Alizadeh is the ultimate owner – at least on paper – of the Plaintiffs, as she owns L&Y.

Defendants are attempting to depose Missaghi and have asked Plaintiffs to produce relevant evidence withheld on the ground that it is in the possession, custody, or control of Missaghi, who is a non-party whom they purportedly do not "control." Plaintiffs, again asserting a lack of control over Missaghi, have refused to produce him for deposition or to produce any documents in his possession, custody, or control. As discussed below, the evidence – including Missaghi's own words and actions – shows that he does exercise control over the Plaintiffs and that they are able to direct him to participate in discovery in

this case.

**Applicable Standards**

"Generally, non-parties must be served with a subpoena for a deposition and they may not be compelled to attend via a notice or a court order without such subpoena. [] . . . A notice is sufficient to require an officer, director, or managing agent to appear at the deposition, even if the deposing party requests that they bring documents or things to the deposition. [] Further, though the corporation is not subject to sanctions for an employee's failure to appear, the corporation is responsible to produce the officer, director, or managing agent who received notice to appear at a deposition. [] Thus, an officer, director, or managing agent's failure to attend a deposition is treated as the corporation's failure, and is sanctionable under Rule 37(d). [].ˮ *Int'l Bhd. of Elec. Workers, Loc. 474 v. Eagle Elec. Co.*, No. CIV 06-2151-M1/V, 2007 WL 622504, at *4 (W.D. Tenn. Feb. 22, 2007) (internal citations omitted). The question before this Court, then, is whether Missaghi is Plaintiffs' "managing agent."

"The law concerning who may properly be designated as a managing agent is sketchy. Largely because of the vast variety of factual circumstances to which the concept must be applied, the standard, like so many others in the law, remains a functional one to be determined largely on a case-by-case basis." *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,* 802 F.2d 1448, 1452 (D.C. Cir. 1986). Courts generally agree, however, that "the term[ ] Managing Agent ... should not be given too literal an interpretation, and that applications thereunder should be treated and determined on an ad hoc basis ...." *Kolb v. A.H. Bull Steamship Co.,* 31 F.R.D. 252, 254 (E.D.N.Y.1962). The

3

Sixth Circuit has adopted the following three-factor test to determine whether a witness is a "managing agent":

> "[A] managing agent of a corporation, partnership or association is any person who:
>
> 1. Acts with superior authority and is invested with general powers to exercise his judgment and discretion in dealing with his principal's affairs (as distinguished from a common employee, who does only what he is told to do; has no discretion about what he can or cannot do; and is responsible to an immediate superior who has control over his acts);
>
> 2. Can be depended upon to carry out his principal's directions to give testimony at the demand of a party engaged in litigation with his principals; and
>
> 3. Can be expected to identify himself with the interests of his principal rather than those of the other party."

*Brandon v. Art Centre Hospital (Osteopathic)*, 366 F.2d 369, 372 (6th Cir. 1966) (citing *Newark Insurance Company v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957)).[2]

Applying these principles here, the evidence compels the finding that Missaghi is a managing agent of Plaintiffs, and that Plaintiffs must produce him for deposition and produce relevant, responsive documents in his possession, custody, or control.

---

[2] *See also Krauss v. Erie R. Co.,* 16 F.R.D. 126, 127 (S.D.N.Y. 1954) ("A managing agent, as distinguished from one who is merely 'an employee' is a person invested by the corporation with general powers to exercise his judgment and discretion in dealing with corporate matters; he does not act 'in an inferior capacity' under close supervision or direction of 'superior authority.' He must be a person who has 'the interests of the corporation so close to his heart that he could be depended upon to carry out his employer's direction to give testimony at the demand of a party engaged in litigation with the employer.'") (footnotes omitted); *Church of Scientology*, 802 F.2d at 1453 ("For the purpose of determining whether an individual is a 'managing agent' within the meaning of the discovery rules, the alter ego theory provides a useful analogy.  As in the arena of corporate liability, the focus begins with the character of the individual's control.  In addition, we can profitably examine both the degree to which the interests of the individual and the corporation converge, and how helpful the individual will be in factfinding on the matter at issue, in comparison to others associated with the corporation.  As in all matters appertaining to discovery, it is the ends of justice that are to be served.").

**Discussion**

*Past History*

The individuals at issue in this case have quite the history together. In an affidavit Missaghi supplied in this case, he notes that he has known defendant Morteza Katebian for over 30 years, and that for most of that time, Katebian was "a trusted family friend" who was "invited to participate in many of Laila's corporations as a director." (ECF No. 393, PageID.25021).[3] At least with respect to the Skymark entities at issue in this case, however, Missaghi's statement is both incorrect and instructive on the issue presently before the Court. As the Court explained in its R&R, the Skymark entities fraudulently identified Katebian in loan paperwork not as a "director," but as their "100% owner." (ECF No. 201, PageID.16123-26). They did this so that they could use Katebian's U.S. citizenship to obtain a $17,000,000 loan they otherwise would have been unable to secure. (*Id.*). In other words, Plaintiffs have a history of using subterfuge to hide their ownership and control structure. (*Id.*).

Missaghi has his own history with that sort of conduct. In their operative amended complaint, Plaintiffs allege "[o]n December 17, 2019, 'Ben' [Katebian] was convicted of securities fraud by the Ontario Securities Commission ('OSC') as a result of a scheme he and his son, Defendant Payam Katebian, operated through Moneygate Mortgage Investment Corp. ('MGMIC')." (ECF No. 246, PageID.17389). While the OSC's findings certainly cast the Katebian's in a very negative light, the OSC also found that Missaghi

---

[3] Katebian had also been a "business partner" of Missaghi's father. (ECF No. 393, PageID.29053).

5

was an "undisclosed principal" of MGMIC, "exercised increasing and considerable control over the affairs of MGMIC," and benefitted personally from the non-disclosure of those facts to MGMIC's investors because the vast majority of MGMIC's bad loans were made to entities "related to Missaghi." (ECF No. 246-1, PageID.17490, 17515). The OSC also implied that the reason for Missaghi's hidden relationship to MGMIC was because he was an "undischarged bankrupt," and "therefore disqualified from being a director of an Ontario corporation." (*Id.*, PageID.17478).

In sum, there is substantial evidence in the record that the mere fact that Missaghi is not specifically identified in the Plaintiffs' corporate records as a "director" far from establishes that he does not exercise at least some level of control over them. Indeed, as discussed below, the record evidence demonstrates that Missaghi exercises sufficient control over the Plaintiffs such that he can be deemed a "managing agent" who must participate in discovery in this case.

### *Evidence Regarding Missaghi's Control over Plaintiffs*

Missaghi admits that he "manages" Plaintiffs' properties – but claims he does so as a "managing consultant." (ECF No. 393, PageID.25021). The evidence, particularly as it relates to this litigation, shows Missaghi's characterization is nothing more than semantics, and that he actually exercises at least some level of control and authority over the Plaintiffs.

For example, in connection with Plaintiffs' scheme to obtain the loan that is the subject of the R&R, Missaghi e-mailed the Katebians, stating:

> If you have any questions or concerns and wish to discuss it with [attorney] John Premo, ***you will need to contact me first*** as John's firm is the Corporate lawyer for the companies and as such can only discuss

6

> these matters **with my consent** or Laila's consent.  Again just ask me and **i can** have John provide you the information you need.
>
> Never the less [sic] while the personal covenants in the mortgage are being removed in the next 2 weeks or so, **I will** have John or myself keep you informed as to once the Personal guarantee covenants are relinquished for yourself in your personal capacity in those 2 mortgages and Laila will beprovide [sic] the personal guarantee's as required by those 2 mortgages.

(ECF No. 393, PageID.25043 (emphasis added); *see also id.*, PageID.25044 (Missaghi further directing action regarding the loans)).

Another example of Missaghi's control over the Plaintiffs is seen in his threatening communications to Katebian and others about ***his*** plans for using this and related litigation commenced by some of the Plaintiffs:

- You [non-party Rakesh Mehta] and Sonie and your mother just got added to the [Canadian court] claim [of Plaintiff Hazelton Homes Corporation][4] as of today. . . .  You don't bring the funds back ***I will*** bring your brother and his wife as co-conspirators into it.  That's they [sic] beauty of this claim.  Just need to add as Co-conspirators.  You know this is only the beginning [sic]. Right?  ***I will*** stop when ***I know*** that there is nothing left.  Anyways, we will be tangled up for a very long time and just when its [sic] almost over I will start a new one.  I will continue with a firm budget set for you and your family for litigation and court matters for a [sic] entire decade.  Have nice [sic] life of [sic] what will be left of it.  (ECF No. 393, PageID.25026) (emphasis added).

- Ben.  I just got off a call with Ed and John. . .  if you continue this game[] ***[m]e and you*** will have a big probkem [sic].  I'm making this crystal clear to you. . . . How do u like ***I start with you*** on everything?  . . . I can start here and US too.  When I say to respect perameters [sic]

---

[4] At her deposition, Laila Alizadeh was asked if she owns "Hazelton Homes Corporation," one of the plaintiffs in this case.  (*Id.*, PageID.25032).  Alizadeh responded, "That name – I own a company with Hazelton but that particular one, I have to check."  (*Id.*, PageID.25032).  When asked if plaintiff Hazelton Homes Corporation "still operates," Alizadeh was unable to answer. (*Id.*, PageID.25033).  She similarly testified that she was not comfortable answering any questions about that company.  (*Id.*).

    means respect peraneters [sic].  Otherwise everything in your life [P]ayams [sic] and anyone close to you will aslo [sic] change.  (*Id.*, PageID.25048) (emphasis added).

- I've told you before that ***we are not playing games***.  I made this very clear to you. . . . it.  If we are playing leverage games then tell me so that we can play right across Canada to US to California and bring all family members into it from US to to [sic] Toronto. this way We will cover it all and everyone.  Bring *everyone* in.  This way for the next several years we can have issues to resolve. . . . If you want me to ever take you seriously again at all on any level in our friendship best you start respecting your parameters.  Know where you belong.  Know your place and position.  If you don't I told you ***we will have huge problems*** and ***I have to close certain doors on you*** and even may have to take extreme actions that will effect you and everyone around.  So ***just don't force my hand*** on these avenues as I'm not at all amused anymore. . . .  Getting emotional over Troy [Wilson] and then trying to vent and relieve yourself and creating problems ***for me and my business*** isn't what normal or sophisticated people do.  (*Id.*, PageID.25045) (emphasis added).

- I know that you [attorney John Premo] will take the necessary steps on your own behalf and the Firm to not only protect yourself and make your own allegations against Ben [Katebian], but ***we shall too*** as well right across the board for his cavalier actions and his unfortunate and unlawful tactics to gain some leverage for whatever imaginary reasons that he feels will satisfy his imagination. . . . If by 4 pm today he emails your firm the retraction of his allegations of Friday, then we will look upon this matter as a reaction of emotions between one being to another on a personal issue ( Ben and Troy)[.]  If Ben doesn't, then as I have stated, There is no respect, there is no respect to parameters, and most of there is no respect to logic or common sense or value to any of us on any level.  At which point ***he has left me*** and yourselves ***with ver [sic] little choice but to deal with him swiftly and accordingly*** without any further hesitation.  (*Id.*, PageID.25046) (emphasis added).

Finally, the Court notes that Missaghi voluntarily submitted an affidavit on behalf of plaintiff 2399021 Ontario, Inc. in connection with a related civil action between the parties currently pending in Florida.  (*Id.*, PageID.25053-56).  Missaghi has also agreed to

8

testify on the corporation's behalf at trial in that case.  (ECF No. 410, PageID.25210).[5]  And, Troy Wilson testified that 2399021 Ontario, Inc. acquired the Florida property pursuant to a deed in lieu of foreclosure that Missaghi negotiated.  (ECF No. 393, PageID.25041).

In light of the foregoing evidence, the Court finds that, particularly with respect to the issues at stake in this litigation, Missaghi is a managing agent of Plaintiffs and can properly be directed by Plaintiffs to provide relevant requested discovery and sit for a deposition.  Missaghi demonstrated his authority over Plaintiffs by directing some of the central transactions at issue in this case on Plaintiffs' behalf and by sending text messages and e-mails which show he plays a central role as to strategic decisions about this litigation.  Those communications also suggest, implicitly and explicitly, that Missaghi considers Plaintiffs' business to be *his* business.  Given that, and the fact that Plaintiffs' purported owner, Ms. Alizadeh, is Missaghi's spouse, he certainly can be depended upon to carry out her instructions to participate in the discovery process in this case, and can be expected to identify himself with Plaintiffs' interests.  *Brandon*, 366 F.2d at 372.  Finally, the Court's finding is consistent with Missaghi's and Plaintiffs' past history of using subterfuge with respect to corporate ownership and control issues, and it serves the ends of justice in this case to require his participation in discovery.  *Church of Scientology*, 802 F.2d at 1453.

---

[5] In their reply brief, Defendants assert that they attached a recent e-mail from Plaintiffs' counsel reflecting that Missaghi would appear at the Florida trial to testify on behalf of plaintiff 2399021 Ontario, Inc.  (ECF No. 410, PageID.25210).  Although Defendants failed to attach the e-mail to their reply brief, at oral argument Plaintiffs did not dispute Defendants' characterization of it.

For all of the foregoing reasons, and those stated on the record at the hearing, Defendants' instant motion to compel **(ECF No. 393)** is **GRANTED**. Within the next **14 days**, Plaintiffs shall produce to Defendants any requested documents previously withheld on the ground that they were in Missaghi's possession, custody, or control, and not Plaintiffs'. On a mutually agreeable date within the next **30 days**, Plaintiffs shall produce Ara Missaghi for a deposition.

**IT IS SO ORDERED.**

Dated: May 6, 2024

s/ David R. Grand
DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 6, 2024.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager